GEORGIA-PACIFIC CORPORATION *v.*
James Allen CARTER; Janice Carter; David Bowie;
Barbara Bowie; John L. Surrett; Rose Surrett; Marilyn Woods;
and City of Crossett

07-105                                          265 S.W.3d 107

Supreme Court of Arkansas
Opinion delivered October 11, 2007

*McMath Woods P.A.*, by: *Samuel E. Ledbetter; Gibson & Keith, PLC*, by: *C.C. "Cliff" Gibson, III*; and *King & Spalding*, by: *J Kevin Buster* and *Carmen R. Toledo*, for appellant.

*Richard H. Mays Law Firm*, by: *Richard H. Mays*, for appellees James Allen Carter, et al.

*Hamilton & Hamilton, PLLC*, by: *James A. Hamilton* and *Timothy R. Leonard*, for appellee City of Crossett.

PAUL E. DANIELSON, Justice. Appellant Georgia-Pacific Corporation appeals from the circuit court's order granting limited class certification to appellees James Allen Carter, Janice Carter, David Bowie, Barbara Bowie, John L. Surrett, Rose Surrett, and Marilyn Woods, individually and as representatives of residents and property owners of West Crossett, Arkansas (hereinafter "the

property owners").[1] It asserts three points on appeal: (1) that class certification was improper because the property owners did not show that common issues predominated over individual issues; (2) that class certification was not the superior method to adjudicate the controversy; and (3) that the property owners failed to come forward with any evidence to support class certification. We reverse and remand the circuit court's order.

On April 20, 2004, the property owners filed a class-action complaint against Georgia-Pacific and the City of Crossett for "damages and injunctive relief arising out of vapors, gasses, odors, and other forms of hazardous, noxious, toxic and/or harmful substances and contamination issued and emitted from the industrial wastewater treatment system that the defendants Georgia-Pacific Corporation and the City of Crossett, Arkansas, have operated throughout the West Crossett community over a period of many years, and which harmful substances and contamination have migrated through the air to and into the property, homes and persons of the plaintiffs, where such substances and contamination have occasioned injury, harm and inconvenience as set for[th] hereinafter." The complaint alleged six counts, including negligence, gross negligence, nuisance, trespass, strict liability, and damages, and requested injunctive relief.

Following a motion for certification of the class by the property owners, the circuit court held a hearing, after which it issued its order granting limited class certification. In its order, the circuit court certified for class-action treatment "the plaintiffs' private nuisance claims against G.P.:"

> This Court, for reasons given herein, limits this certification to those private nuisance claims which, as of the date of the complaint, impacted the class members' use and enjoyment of their property and thereby unfavorably affected its value. This Court does not certify personal injury claims. Those potential class members choosing to assert personal injury claims may opt out.

---

[1] While the City of Crossett was also a defendant in this case, the claim against it was not included in the class certification. The City did file a brief in the instant case, but only to state the City's position that it was in agreement with the circuit court's order, as it pertained to the City. In its order, the circuit court held in abeyance the property owners' claim against the City. That decision was not appealed by Georgia-Pacific and, thus, is not before this court.

In addition, the circuit court held in abeyance any determination on the class-action status of the property owners' claims against the City of Crossett:

> The City remains a party, but a determination of the class action status of plaintiffs' claim against the City is held in abeyance for reasons of judicial economy pending the outcome of the private nuisance claim against G.P. After all, it is undisputed that only two percent of the materials which enter and are discharged by the G.P. treatment system come from the City. Additionally, plaintiffs' complaint alleges that the private nuisance is caused by a treatment system solely owned and operated by G.P. There is no allegation of ownership or control of G.P.'s system by the City. Therefore, common sense requires the inverse condemnation claim to be held in abeyance pending the outcome of plaintiffs' claims against G.P. If, however, the City through the course of this litigation assumes partial responsibility for the alleged nuisance, or if G.P. asserts with justification that the City shares responsibility for this problem, then this Court will revisit this issue. Additionally, the plaintiffs' request for injunctive relief will be considered when and if a jury decides the common and prevailing issue of law and fact against G.P.

The circuit court then went on to analyze the "six factors" for class certification, making specific findings.

With respect to numerosity, the circuit court found that the property owners claimed 300 potential class members, a number which the circuit court found made joinder impractical. In addition, the circuit court found that the proposed class group was not amorphous, but was sufficiently ascertainable and defined to meet the requirements of Ark. R. Civ. P. 23. It further found that the complaint alleged a geographical area that was sufficiently defined to satisfy the requirement of numerosity.

With respect to commonality, the circuit court found that the property owners' allegation that their damages resulted from a "single albeit continuous course of action in the operation of its waste water treatment facility" was the set of facts common to all the property owners' claims and Georgia-Pacific's liability. As to typicality, the circuit court observed that the injury to the named property owners allegedly resulted from Georgia-Pacific's continuous and current operation of its waste water treatment facility. The circuit court noted that it had considered the depositions of several named plaintiffs and found that the class representatives' claims were sufficiently similar to those of the putative class to

satisfy both the commonality and typicality requirements. It further stated that any variances in damages and the number of plaintiffs that may ultimately recover was unimportant.

With respect to superiority, the circuit court noted that there was no truly efficient method to adjudicate the claims before it. Nonetheless, the circuit court found that class certification was the clearly superior method of disposing of the numerous claims. The circuit court continued, stating:

> The common predominating question is does G.P.'s waste water treatment system constitute a private nuisance. If the fact finder answers this question no, then G.P. has no liability to any class members. If the answer is yes, then the cases can be splintered off for adjudication of the individual issues. . . .

Finally, as to adequacy, the circuit court found that counsel was presumed competent and that no attempt to make a contrary showing had been made. In addition, the circuit court found that based on the depositions of the named plaintiffs and others, the plaintiffs had demonstrated sufficient interest in the litigation to serve as class representatives. The circuit court concluded, stating:

> This Court class certifies the plaintiffs' private nuisance claims against G.P. on account of any alleged interference with the use and enjoyment of the class members' property which may be caused by the current operation of G.P.'s waste water treatment system.

Georgia-Pacific now appeals.

We have held that circuit courts are given broad discretion in matters regarding class certification and that we will not reverse a circuit court's decision to grant or deny class certification absent an abuse of discretion. *See Beverly Enters.-Arkansas, Inc. v. Thomas,* 370 Ark. 310, 259 S.W.3d 445 (2007). When reviewing a circuit court's class-certification order, we review the evidence contained in the record to determine whether it supports the circuit court's decision. *See id.* We do not delve into the merits of the underlying claims at this stage, as the issue of whether to certify a class is not determined by whether the plaintiff has stated a cause of action for the proposed class that will prevail. *See id.*

Rule 23(a-b) of the Arkansas Rules of Civil Procedure sets forth the prerequisites for a class action:

> (a) *Prerequisites to Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1)

the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties and their counsel will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. At an early practicable time after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. For purposes of this subdivision, "practicable" means reasonably capable of being accomplished. An order under this section may be altered or amended at any time before the court enters final judgment. An order certifying a class action must define the class and the class claims, issues, or defenses.

Ark. R. Civ. P. 23(a-b) (2007). Interpreting this rule, we have held that, in order for a class-action suit to be certified, the party seeking certification must establish each of the following six factors: (1) numerosity; (2) commonality; (3) predominance (4) typicality; (5) superiority; and (6) adequacy. *See, e.g., Valley v. National Zinc Processors, Inc.,* 364 Ark. 184, 217 S.W.3d 832 (2005).

Georgia-Pacific argues, as an initial matter, that the circuit court failed to analyze the predominance requirement and, therefore, reversal is justified. In addition, Georgia-Pacific asserts that this is a mass toxic-tort case and that numerous individual issues far outweigh and outnumber any common issues. It contends that even as to the limited private-nuisance claims certified for class treatment, it is clear that individual issues predominate. In essence, Georgia-Pacific contends that because a private-nuisance claim is asserted, such would necessarily require an analysis of the impact, if any, of its waste water treatment system on each class member's use and enjoyment of his or her property, thereby rendering the claim improper for class-action treatment.

The property owners respond that the circuit court did address the predominance issue. They maintain that all of the claims of the named plaintiffs and of the class arise from one

common origin: the emissions originating from the Georgia-Pacific waste water treatment system that migrate to the properties of the plaintiffs and the class members within the designated geographic area. They further contend that the common threshold liability issue is whether Georgia-Pacific's current operation of its system unreasonably or unlawfully interferes with the use and enjoyment of their properties.

We must first address whether the circuit court adequately addressed the requirement of predominance. It is our opinion that the circuit court did. While not set forth in a separate analysis, a review of the circuit court's order reveals that the circuit court specifically found as follows:

> The common predominating question is does G.P.'s waste water treatment system constitute a private nuisance. If the fact finder answers this question no, then G.P. has no liability to any class members. If the answer is yes, then the cases can be splintered off for adjudication of the individual issues.

Thus, we cannot say that the circuit court failed to make a specific finding with respect to the predominance requirement, as claimed by Georgia-Pacific.

We turn, then, to whether common issues predominate over individual issues in the instant case. In *Beverly Enterprises-Arkansas v. Thomas, supra*, we observed that the starting point in examining the predominance issue is whether a common wrong has been alleged against the defendant. If a case involves preliminary, common issues of liability and wrongdoing that affect all class members, the predominance requirement of Rule 23 is satisfied even if the circuit court must subsequently determine individual damage issues in bifurcated proceedings. *See Johnson's Sales Co., Inc. v. Harris*, 370 Ark. 387, 260 S.W.3d 273 (2007). We have recognized that a bifurcated process of certifying a class to resolve preliminary, common issues and then decertifying the class to resolve individual issues, such as damages, is consistent with Rule 23. *See id.* In addition, we have said that:

> The predominance element can be satisfied if the preliminary, common issues may be resolved before any individual issues. In making this determination, we do not merely compare the number of individual versus common claims. Instead, we must decide if the issues common to all plaintiffs "predominate over" the individual issues, which can be resolved during the decertified stage of bifurcated proceedings.

*Asbury Auto. Group, Inc. v. Palasack*, 366 Ark. 601, 610, 237 S.W.3d 462, 469 (2006) (quoting *Van Buren Sch. Dist. v. Jones*, 365 Ark. 610, 620, 232 S.W.3d 444, 452 (2006)).

A review of our case law reveals that we have distinguished between class actions involving mass-tort claims and toxic-tort claims, the latter of which is presented in the instant case. For instance, in *International Union of Electrical, Radio & Machine Workers v. Hudson*, 295 Ark. 107, 747 S.W.2d 81 (1988), this court rejected the theory that an alleged non-instantaneous mass-tort action could never be the object of a class action. We further quoted, in *Summons v. Missouri Pacific Railroad*, 306 Ark. 116, 813 S.W.2d 240 (1991), from one law review article, noting that its exhaustive review of all the considerations led to the conclusion that the class action involved was the superior manner of deciding the typical mass-tort case:

> In mass tort cases involving claims for personal injury, which pose daunting problems of causation and remedy, the price of individual justice is notoriously high. Because they typically involve complex factual and legal questions, mass tort claims are exceedingly, if not prohibitively, expensive to litigate. The questions of whether the defendant's conduct failed to satisfy the governing standard of liability frequently entail interrelated technological and policy issues that require extensive discovery, expertise, and preparation to present and resolve adequately. Equally demanding are the causation issues in mass tort cases, such as whether the plaintiff's condition was caused by exposure to the substance in question or to some other source of the same disease risk.
>
> The case-by-case mode of adjudication magnifies this burden by requiring the parties and courts to reinvent the wheel for each claim. The merits of each case are determined de novo even though the major liability issues are common to every claim arising from the mass tort accident, and even though they may have been previously determined several times by full and fair trials. These costs exclude many mass tort victims from the system and sharply reduce the recovery for those who gain access. Win or lose, the system's private law process exacts a punishing surcharge from defendant firms as well as plaintiffs.
>
> . . . .
>
> These conditions generally disadvantage claimants. Because defendant firms are in a position to spread the litigation costs over the

entire class of mass accident claims, while plaintiffs, being deprived of the economies of scale afforded by class actions, can not, the result will usually be that the firms will escape the full loss they have caused and, after deducting their attorney's shares, the victims will receive a relatively small proportion of any recovery as compensation. As a consequence, the tort system's primary objectives of compensation and deterrence are seriously jeopardized.

. . . .

Because of their cost-spreading advantages, a defendant firm typically can afford not only to invest more in developing the merits of the claim than the opposing plaintiff attorney, but also to finance a "war of attrition" through costly discovery and motion practice that depletes the adversary's litigation resources. The consequences of redundantly litigating common questions thus skews the presentation of the merits, promotes abusive strategic use of procedure, needlessly consumes public resources, and ultimately drains away a large amount of the funds available to redress by judgment or settlement, victim losses.

306 Ark. at 126-27, 813 S.W.2d at 245-46 (quoting David Rosenberg, *Class Actions for Mass Torts: Doing Individual Justice by Collective Means*, 62 Ind. L.J. 561 (1987)).

That being said, mass-tort actions present unique certification problems because they generally involve numerous individual issues as to the defendant's conduct, causation, and damages. *See Baker v. Wyeth-Ayerst Labs. Div.*, 338 Ark. 242, 992 S.W.2d 797 (1999). However, courts typically distinguish between mass-accident cases, where injuries are caused by a single, catastrophic event occurring at one time and place, and toxic-tort or products-liability cases, where the injuries are the result of a series of events occurring over a considerable length of time and under different circumstances. *See id.* Class certification is more common in mass-accident cases than in toxic-tort or products-liability cases, due to the enormity and complexity of the individual issues presented by toxic-tort or products-liability cases. *See id.*

In *Baker*, which involved a class-action suit against the manufacturers of several diet drugs, alleging negligence, products liability, failure to warn, and breach of express and implied warranties, we noted that we too have been more inclined to approve class certification in mass-accident cases than in products-

liability or toxic-torts cases. *See id.* We did not, however, hold that class certification should be denied in all products-liability or toxic-torts cases. *See id.* Instead, we held that class certification was improper in the *Baker* case because the numerous and complex individual issues predominated over the common issues. *See id.*

■ The same holds true in the instant case, just as Georgia-Pacific claims. We have defined "nuisance" as "conduct by one landowner that unreasonably interferes with the use and enjoyment of the lands of another and includes conduct on property that disturbs the peaceful, quiet, and undisturbed use and enjoyment of nearby property." *Goforth v. Smith*, 338 Ark. 65, 79, 991 S.W.2d 579, 587 (1999). The general rule is that in order to constitute a nuisance, the intrusion must result in physical harm, as distinguished from unfounded fear of harm, which must be proven to be certain, substantial, and beyond speculation and conjecture. *See id.*

Thus, while the action of the tortfeasor is a relevant consideration in determining a nuisance, it is the interference with a property owner's use and enjoyment that is the determining factor. Indeed,

> [u]nlike most other torts, nuisance is not centrally concerned with the nature of the conduct causing the damage, but with the nature and relative importance of the interests interfered with or invaded. Thus, courts have said that nuisance is a field of tort liability, rather than a type of tortious conduct, a result rather than a theory of recovery, or an effect rather than a cause of tort liability, so that conduct antecedent to the interference may be irrelevant. Further, according to one view, there is, in fact, no such thing as a tort of nuisance, that is, that nuisance is not a separate tort in itself, but instead is a type of damage, and plaintiffs may recover in nuisance despite the otherwise nontortious nature of the conduct which creates the injury.

58 Am. Jur. 2d *Nuisances* § 64 (2007) (footnotes omitted).

■ Here, with respect to their nuisance claim, the property owners alleged that "[t]he chemicals, gasses, vapors and contaminants that are emitted from the defendants' System and migrate to the plaintiffs' persons and properties . . . and the adverse consequences that they cause to the plaintiffs' persons and property, constitute an unreasonable interference with plaintiffs' use and enjoyment of their property, creates a hazard to the health and

welfare of the plaintiffs, and diminishes the utility, value and function of plaintiffs' property *for many purposes* and has caused plaintiffs injuries and damages." (Emphasis added.) We hold that it is evident, from the property owners' claims and from the sheer nature of a claim for private nuisance, that individual issues exist in the instant case as to whether and to what extent Georgia-Pacific's operation of its waste water treatment system caused consequences to, and constituted an unreasonable interference with, the property owners' use and enjoyment of their property. For this reason, we cannot say that a common question of law or fact predominates over individual issues, and we reverse and remand the circuit court's order granting limited class certification. *See, e.g., Aprea v. Hazeltine Corp.*, 247 A.D.2d 564, 669 N.Y.S.2d 61 (1998) (finding that no predominance was present and affirming the supreme court's denial of plaintiffs' motion for class certification, which alleged nuisance, negligence, and trespass, in a class action on behalf of all residents and property owners who had been injured as a result of the alleged unlawful discharge of toxic chemicals by the defendant); *Ford v. Murphy Oil U.S.A., Inc.*, 703 So. 2d 542 (La. 1997) (finding no predominance in an action by thousands of residents who lived near four petrochemical plants and who claimed physical and property damages as a result of continuous emissions, combined and individual, of the defendant companies, where each class member would have to offer different facts to establish that certain defendants' emissions, either individually or in combination, caused them specific damages on yet unspecified dates, and where the causation issue was even more complicated considering the widely divergent types of personal, property, and business damages claimed and considering each plaintiffs' unique habits, exposures, length of exposures, medications, medical conditions, employment, and location of residence or business). Accordingly, because we can find no common question of law or fact, which predominates over individual issues, we reverse and remand the circuit court's order granting limited class certification. Because we reverse and remand on the issue of predominance, there is no need to address Georgia-Pacific's remaining points on appeal. *See, e.g., Southwestern Bell Tel. Co. v. Pipkin Enters., Inc.*, 359 Ark. 402, 198 S.W.3d 115 (2004).

Reversed and remanded.

GLAZE, J., not participating.