Rhonda K. Wood, Justice, dissenting. Class certification is proper only when .the court can determine that there are questions of law or fact that are common to the putative class. Union Pac. R.R. v. Vickers, 2009 Ark. 259, 308 S.W.3d 573. We will reverse a class certification when there is no one set of operative facts that establishes liability. Id. Because there are seemingly as many different questions and sets of operative facts presented in this case as there are class members, I cannot join the majority’s opinion. When a case turns on highly individualized inquiries that differ from class member to class member, as in this one, our precedent has been to hold that the class-certification requirements are not satisfied. See id.; Williamson v. Sanofi Winthrop Pharm., Inc., 347 Ark. 89, 60 S.W.3d 428 (2001); Baker v. Wyeth-Ayerst Labs., 338 Ark. 242, 992 S.W.2d 797 (1999). I believe that the present case |isis governed by those just cited, and the principles enunciated therein compel a conclusion that the circuit court abused its discretion by certifying this case as a class action. Therefore, I must respectfully dissent. The plaintiffs in this case presented extensive testimony concerning the working conditions and compensation at the Arkansas Department of Veterans Affairs (ADVA). The testimony ran the gamut from plaintiffs who rarely worked through their lunch break to others who claimed to have worked through lunch virtually every single day. Testimony regarding ADVA’s time-reclamation policy, which enabled workers to get paid for missed lunches, was equally as varied among the plaintiffs, with some having never heard of the policy, some believing it did not apply to missed meal breaks, some claiming they were never told the forms could be used for missed lunches, and still others testifying that their supervisors claimed to have filled out the forms for them. The plaintiffs provided similar testimony about reclaiming time when they were asked to work “off the clock” before and after shifts. They all generally testified that working additional time was very common, but some testified they were told there was no way to get paid for that time because there were no funds available for overtime, some testified they would be reprimanded for reporting overtime, still others testified that they were told to fill out the comp forms for that time but that the forms were not processed, and some testified that there was simply no way to report extra time worked at all. ADVA, on the other hand, produced testimony that contrasted sharply with that of the plaintiffs. ADVA’s witnesses testified that it was incredibly rare to work through lunches and |Mthat they had never been asked to work any time that was not fully compensated. Unlike the plaintiffs, these witnesses testified to a well-known comp-form policy, whereby they were encouraged to report any off-the-clock time by submitting the comp form so that they could be properly paid for that time. The witnesses testified that the procedure for submitting comp forms was explained thoroughly during orientation or thereafter by supervisors and human-resources personnel and that they were familiar with the forms and the procedure, what they covered, and how they were to be used. These witnesses testified to routinely utilizing comp forms to ensure that they were properly compensated for all time worked and that other employees they knew did the same. From these sundry accounts, and in order to justify class certification, the circuit court fishes out the “common” questions of whether ADVA’s lunch auto-deduct policy is illegal and whether ADVA’s time-reclamation policy is reasonable. However, it is apparent from the testimony that the only thing in common about ADVA’s policies is that they were plural and that they were applied differently to each ADVA employee and each employee’s knowledge and understanding of the policies varied from person to person. In discussing commonality, we have explained that we look for scenarios in which “the defendant’s act, independent of any action by the class members, established a common question relating to the entire class to certify the matter as a class action.” Williamson, 347 Ark. at 97, 60 S.W.3d at 433. As it was in Williamson, it is likewise impossible to find such a scenario in this case because the understanding of ADVA’s policies differs wildly from person 11fito person and turns on each individual’s knowledge of the policy and what he or she was told about it. In Williamson, a class of sales reps alleged that they were wrongfully denied bonuses under an incentive program. The program guaranteed bonuses to reps who met certain regional sales standards; however, throughout the year, the employer inadvertently sent update reports to the reps with sales numbers that were compared to national standards. The national standards were more lax than the regional standards, and the reports led the.reps to believe that they would qualify for the bonus even though they were not meeting the higher regional standards. Williamson brought a breach of contract claim and moved to certify a class of reps who had been denied the bonus. The circuit court denied certification, reasoning that there was no common question among the class members “because each member may have had a different understanding of the incentive program or may have known that the reported numbers were in error.” Id. at 93-94, 60 S.W.3d at 430. This court affirmed and pointed out that the plaintiffs had all been given varying documents concerning the incentive plan, some of which contradicted one another. Id. at 100, 60 S.W.3d at 435. We also noted that there had been oral representations about the plan that may or may not have been made to all class members; therefore, “whether and what terms might have existed and on which terms and representations each class member relied [was] an individual fact question that is not common to each member of [the] potential class.” Id., 60 S.W.3d at 435. We were presented with a similar factual situation in Vickers. The plaintiffs had alleged that Union Pacific had a policy and practice of approaching people injured by Union Pacific |lfiand inducing them to settle by discouraging them from seeking an attorney, making misrepresentations to them, and concealing information from the plaintiffs that Union Pacific had a duty to disclose. The circuit court found the following common questions: whether Union Pacific prepared legal documents and instruments; whether it advised plaintiffs of their rights; whether it engaged in the unauthorized practice of law; and whether it engaged in deceptive trade practices. Vickers, 2009 Ark. 259, at 5-6, 308 S.W.3d at 576. We reversed certification, explaining that Union Pacific’s interaction with each plaintiff differed. Id. at 18, 308 S.W.3d at 582. We noted that the documents that were prepared by Union Pacific varied from plaintiff to plaintiff and any representations made by Union Pacific necessarily depended on individualized oral representations made by specific Union Pacific representatives. Id., 308 S.W.3d at 576. In both cases, there was no single set of operative facts or conduct by the defendant that could establish liability. Each potential plaintiffs claim turned on the individualized interactions between plaintiff and defendant, and liability could only ever be established as to a single claimant at a time by examining the defendant’s conduct as to that individual — a task not well suited to class litigation. Such is the case here. There is no common question as to ADVA’s policies that can be determined on a class-wide basis because it is the individual application of those policies to specific plaintiffs that has been placed at issue in this case. As the disparate testimony illustrates, the plaintiffs testified as to multiple policies that seemed to have been applied differently to each class membér, and each member’s understanding of the policies seemingly varies based on a host of individualized issues. Like in Williamson and Vickers, the | ^training on the policies and the procedure for submitting the comp forms varied based on who conducted the training or orientation and who processed the comp form Oral representations about the comp forms and ability to reclaim time seemingly varied from supervisor to supervisor and even shift to shift and, as demonstrated by the testimony, are different from plaintiff to plaintiff. The questions in this case are not really common to all class members, but like in Williamson and Vickers, each plaintiffs claim depends on an individualized inquiry into how ADVA interacted with that plaintiff Whether ADVA’s policies were illegal or reasonable necessarily depends on which policy, because the plaintiffs testified as to varied time-reclamation policies, applied to each individual claimant, as it is clear that not all class members were prevented from receiving proper compensation under the policies, as alleged by the plaintiffs. By painting with the broadest possible brush, the majority frames the question as whether ADVA’s policy, apparently getting to the merits and finding there was a singular policy, itself was legal and, thus, characterizes the question as one common to all class members — disregarding ADVA’s examples of different individual treatment under different policies, which belies the propriety of class certification. In contrast, we recently certified a class of plaintiffs in Philip Morris Cos., Inc. v. Miner, 2015 Ark. 73, 462 S.W.3d 313. Unlike this case, there was a unified question, equally applicable to all class members, regarding the conduct of Philip Morris, i.e., whether Philip Morris misrepresented the characteristics of its Lights cigarettes. This question was wholly dependent on Philip Morris’s actions in manufacturing and marketing its cigarettes and could be answered independently of any [isinquiry into the behavior of individual class members. In the current case, we cannot simply ask whether ADVA’s policies were legal in the abstract. Unlike Philip Morris’s marketing message, which was the same as to all class members, it is unclear at this point what ADVA’s policies were and yet very clear that any policy was not applied consistently to each class member, making the operative question to be answered in each instance, “Was ADVA’s particular policy that was applied to plaintiff X applied in such a way that it violated the Arkansas Minimum Wage Act (AMWA)?” This is an individualized question which turns on an examination of the facts and circumstances of each plaintiff. In Baker, we affirmed denial of class certification because the case presented “numerous individual issues that go to the heart of the defendants’ conduct ... such that the defendants’ liability as to each plaintiff will have to be resolved on a case-by-case basis.” 338 Ark. at 249, 992 S.W.2d at 801. Similarly, ADVA’s liability to any specific plaintiff under AMWA can only be established on a ease-by-case basis by examining (1) whether a plaintiff worked in excess of forty hours to begin with; (2) whether the plaintiff worked hours in excess of forty that were not reflected on the plaintiffs time sheet because of ADVA’s automatic lunch deduction or because of compulsory off-the-elock .work; and (3) whether the plaintiff was or was not properly compensated for those excess hours after submitting a comp form, i.e., whether ADVA’s auto-deduct policy was legal and its time-reclamation policies were reasonable. The individualized nature of the inquiry is underscored by the fact that the plaintiffs have already had to nonsuit two individuals after discovering they had not worked over, forty hours and could not, under any set of circumstances, establish liability under |iaAMWA as to those individuals. Such is this whole case, and the same individualized inquiries that resulted in the nonsuit will have to be answered as to each plaintiff, making class litigation unwieldy, inefficient, and inappropriate under our class-certification requirements. Therefore, I respectfully dissent. Baker and Hart, JJ., join.