2009 Ark. 151

ADVANCE AMERICA SERVICING OF ARKANSAS, INC., d/b/a Advance America Cash Advance; Advance America, Cash Advance Centers of Arkansas, Inc. and Advance America, Cash Advance Centers, Inc., Appellants,

v.

Brenda MCGINNIS individually and o/b/o a class of similarly situated persons, Appellee.

No. 08–992.

Supreme Court of Arkansas.

March 19, 2009.

Rehearing Denied April 23, 2009.

See also 375 Ark. 24, 289 S.W.3d 37.

Rock; Sutherland Asbill & Brennan LLP, by: Lewis S. Wiener, Phillip E. Stano, and Brendan Ballard, Washington, DC, for appellants.

Todd Turner, Chris Averitt, Jonesboro, for appellee.

JIM HANNAH, Chief Justice.

This is an interlocutory appeal of the Clark County Circuit Court's order granting a motion for class certification pursuant to Arkansas Rule of Civil Procedure 23. Appellants Advance America Servicing of Arkansas, Inc. (Servicing); Advance America Cash Advance Centers of Arkansas, Inc. (Advance America/Arkansas); and Advance America Cash Advance Centers, Inc. (Centers) (collectively Advance America) contend that the circuit court abused its discretion in granting a motion filed by appellee Brenda McGinnis seeking class certification because McGinnis is not an adequate class representative. Advance America asserts that McGinnis cannot adequately represent the class because she is incapable of making decisions in the best interests of the class due to her untreated mental illness and because she is not familiar with the basic facts of the lawsuit. Advance America also asserts that there is no evidence that McGinnis comprehends her duties and responsibilities as a class representative. Additionally, Advance America claims that McGinnis cannot represent the class because she has conflicts of interest with the class. Specifically, Advance America claims that McGinnis's lack of damages undermines her incentive to prosecute the case vigorously. Advance America also claims that McGinnis has a conflict of interest with the class because she did not participate in a prior court-approved settlement. Finally, Advance America contends that McGinnis has a conflict of interest with the class

Quattlebaum, Grooms, Tull & Burrow, PLLC, by: John E. Tull III and E.B. Chiles IV, Little Rock; and Wright, Lindsey & Jennings, LLP, by: Claire Shows Hancock and Gary D. Marts, Jr., Little

because she lacked a contractual relationship with Advance America.

■ This is a second or subsequent appeal following an appeal which has been decided in this court. *See Advance Am. Servicing of Ark., Inc. v. McGinnis,* 375 Ark. 24, 289 S.W.3d 37 (2008). Thus, our jurisdiction of the instant case is pursuant to Arkansas Supreme Court Rule 1–2(a)(7) (2008). We affirm the circuit court's order certifying the class.

McGinnis filed a putative class-action complaint against Advance America on February 27, 2007, alleging Advance America had charged her and other potential class members usurious interest, engaged in deceptive conduct in violation of the Deceptive Trade Practices Act (DTPA), and violated a prior court-approved settlement. On May 7, 2007, McGinnis filed a motion for class certification. Advance America opposed the certification, and on February 29, 2008, the circuit court held a hearing on the motion. Advance America argued, among other things, that McGinnis was an inadequate class representative because her untreated schizophrenia and other mental illnesses, for which she does not take the prescribed medication, rendered her incapable of making decisions in the best interests of the class as to the conduct of the litigation. Advance America also argued that McGinnis's lack of damages, lack of participation in a prior court-approved settlement, and a lack of a contractual relationship with Advance America undermine the class's ability to enforce many of its claims and, therefore, create conflicts of interest between McGinnis and the class. In response, counsel for the proposed class asserted, among other things, that McGinnis was an adequate representative because she was an involved plaintiff, had appeared at a two-day deposition, and was present at the class-certification hearing.

Further, counsel for the proposed class asserted that McGinnis understood her duties as class representative and testified in her deposition that she was willing to spend her own money, and even mortgage her own house, if necessary, to cover the costs of filing suit. Counsel for the proposed class submitted McGinnis's deposition testimony to the circuit court at the hearing. McGinnis was present at the hearing, but she did not testify.

On April 15, 2008, the circuit court entered an order certifying a class of all persons "who have engaged in check cashing or deferred presentment transactions with the Defendants in Arkansas since February 27, 2002 up through and including the date of the entry of judgment in this case." Included in the order were the following findings, with respect to McGinnis's adequacy as a class representative:

> The Court finds no evidence that Ms. McGinnis is not competent or is unable to fulfill the necessary duties as class representative. Based on the evidence in the record, the Court finds that Brenda McGinnis is an adequate class representative in this case.

> The named Plaintiff has displayed a significant level of interest in this action and has the ability to assist in decision making as to the conduct of the litigation.

> The named Plaintiff has given her deposition in this case and appeared at the hearing on class certification.

> There is no evidence of collusion or conflicting interests between the representative named Plaintiff and members of the class.

This appeal followed.

■ Circuit courts are given broad discretion in matters regarding class certification, and we will not reverse a circuit court's decision to grant or deny class

certification absent an abuse of discretion. *See Asbury Auto. Group, Inc. v. Palasack,* 366 Ark. 601, 237 S.W.3d 462 (2006). When reviewing a circuit court's class-certification order, this court reviews the evidence contained in the record to determine whether it supports the circuit court's decision. *See id.* This court does not delve into the merits of the underlying claims at this stage, as the issue of whether to certify a class is not determined by whether the plaintiff has stated a cause of action for the proposed class that will prevail. *See Am. Abstract & Title Co. v. Rice,* 358 Ark. 1, 186 S.W.3d 705 (2004). When reviewing findings of fact by a circuit court, this court uses a clearly erroneous standard. *See* Ark. R. Civ. P. 52(a) (2008). Thus, findings by the circuit court will not be set aside unless they are clearly against the preponderance of the evidence. *See id.*

Rule 23 of the Arkansas Rules of Civil Procedure provides in relevant part:

(a) *Prerequisites to Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties and their counsel will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. At an early practicable time after the commencement of an action brought as a class action, the court shall determine by order whether it is to be maintained. For purposes of this subdivision, "practicable" means reasonably capable of being accomplished. An order under this section may be altered or amended at any time before the court enters final judgment. An order certifying a class action must define the class and the class claims, issues, or defenses.

Rule 23 provides the requirements for class certification. Specifically, the following six requirements must be met before a lawsuit can be certified as a class action under Rule 23:(1) numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) predominance; and (6) superiority. *See Asbury Auto. Group, supra.*

In this appeal, Advance America challenges only one of the six Rule 23 requirements—adequacy. Therefore, we need not address the remaining five requirements.

Rule 23(a)(4) specifically requires that the representative parties and their counsel be able to adequately protect the interests of the class. This court has previously interpreted Rule 23(a)(4) to require three elements: (1) the representative counsel must be qualified, experienced, and generally able to conduct the litigation; (2) that there be no evidence of collusion or conflicting interest between the representative and the class; and (3) the representative must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation. *See, e.g., Mega Life & Health Ins. Co. v. Jacola,* 330 Ark. 261, 954 S.W.2d 898 (1997).

In her request for certification, McGinnis stated that her attorneys, Todd Tur-

ner, Dan Turner, Chris A. Averitt, and Jay Scholtens would fairly and competently represent the class. While Advance America contended before the circuit court that counsel for the class were unqualified, it has abandoned that argument on appeal. We have held that absent a showing to the contrary, we may presume that the representative's attorney will vigorously and competently pursue the litigation. *See, e.g., USA Check Cashers of Little Rock v. Island,* 349 Ark. 71, 76 S.W.3d 243 (2002). We hold that the first element of the adequacy requirement has been established. We now turn to the other elements of Rule 23(a)(4) and address Advance America's arguments on appeal, beginning with the third element—whether McGinnis displays some minimal level of interest in the action, familiarity with the practices challenged, and the ability to assist in decision making as to the conduct of the litigation.

*Mental Illness*

■ ↳Advance America contends that McGinnis's untreated mental illness renders her incapable of making decisions in the best interests of the class. Specifically, Advance America states that McGinnis's admitted schizophrenia, anxiety, and depression, coupled with her refusal to take the prescribed medication to treat these conditions, disqualify her as an adequate class representative. Advance America claims that McGinnis does not have the mental capacity to make sound decisions on behalf of the class or otherwise carry out the duties of a class representative.

McGinnis's deposition testimony revealed the following. McGinnis stated that she graduated from Jonesboro High School. She stated that after graduating, she worked at a cleaners for a couple of years, and then she worked at Riceland Foods for approximately fifteen years. McGinnis stated that after she got laid off

from Riceland, she worked at Arkansas Glass Factory for a couple of years. She stated that she left that job in 1993 when she became sick with "nerve problems," and she has not worked since that time. McGinnis said that, at that time, she almost had a nervous breakdown, but that she is doing better now. McGinnis stated that her only source of income is social security disability that she receives due to "nerve problems and different things."

McGinnis stated that she began seeing a psychiatrist in 1995, and that he diagnosed her with schizophrenia. She said that she stopped seeing the psychiatrist in 2000 because she could not afford treatment. Currently, McGinnis receives mental-health services from her family physician, who prescribes Xanax and Imipramine for depression and anxiety. She ↳testified that she has hallucinations in which she sees people and hears voices that are not really there. According to McGinnis, she has been hallucinating for at least twenty years.

Advance America contends that further evidence of McGinnis's inability to make decisions on behalf of the class is the fact that she testified that she currently transacts business with other check cashers and does not inform her husband, with whom she shares checking and savings accounts. In addition, Advance America points to McGinnis's deposition testimony where she admitted that she entered into an agreement with another check casher, despite her belief that the interest rate was usurious.

Advance America contends that, absent proper treatment, especially in light of her admitted hallucinations and continuing problems with mental illness, McGinnis does not have the capacity to assist in making decisions that are in the best interests of the class as to the conduct of the litigation. Moreover, Advance America

contends, McGinnis's actions in entering into deferred presentment transactions with higher fees than Servicing after filing the instant lawsuit demonstrate that her mental illness impairs her judgment.

Courts have recognized that persons with limited intellect or mental handicaps can serve as representative plaintiffs in class actions. *See, e.g., Armstrong v. Davis,* 275 F.3d 849 (9th Cir.2001) (stating that prisoners and parolees suffering from, among other things, learning disabilities and mental retardation were adequate representatives); *Jenkins v. Hyundai Motor Fin. Co.,* 2008 WL 781862 (S.D.Ohio Mar. 24, 2008) (noting that plaintiff's suffering from mental health issues such as depression and anxiety did not make her unfit and inadequate to represent the class); *Daniels v. City of New York,* 198 F.R.D. 409 (S.D.N.Y.2001) (stating that mental retardation of a class representative is not an automatic disqualifier, even where the class does not consist of mentally retarded persons).

Advance America contends that the circuit court erroneously relied on *Armstrong v. Davis* to support the conclusion that severe mental illness should not prevent an individual from serving as a class representative. In that case, the class representatives included prisoners and parolees suffering from mobility impairments, hearing disabilities, mental retardation, and renal impairments, and all of the absent class members suffered from at least one of these disabilities. 275 F.3d at 855 & n. 1. The class brought suit against California Board of Prison Terms, alleging that "the state's policies and practices as implemented by both divisions discriminated against them on the basis of disability in violation of the Americans with Disabilities Act (ADA) and section 504 of the Rehabilitation Act, as well as violated the due-process clause of the Fourteenth Amendment." *Id.* at 855.

Advance America points out that in *Armstrong,* the only class representatives who had standing or could have otherwise been adequate to bring an ADA claim were prisoners or parolees who suffered from the named mental and physical disabilities. Advance America states that the instant case is not like *Armstrong,* because, here, McGinnis is not seeking to represent a class of people with schizophrenia or other mental illnesses suing for violations of law relating to such illnesses. Advance America states that, unlike in *Armstrong,* in the present case, class members who are not mentally ill have standing to bring the claims on behalf of the class.

Advance America cites no authority for the proposition that a person suffering from a mental illness may serve as a class representative only when the class action involves allegations relating to that mental illness. Certainly, McGinnis's mental illness does not automatically disqualify her from representing the class. We disagree with Advance America's contention that the instant case is analogous to *Roundtree v. Cincinnati Bell, Inc.,* 90 F.R.D. 7 (S.D.Ohio 1979). In that case, the court denied class certification in a race-related employment-discrimination case, in part because the "plaintiff's personal physical, mental and financial situation ma[d]e it unlikely that he could vigorously pursue a class action." 90 F.R.D. at 10. The court noted that "[t]he medical reports on plaintiff introduced by defendant indicate that plaintiff has suffered physical ailments for at least ten years that have led to a neurosis that adversely affects his temperament" and that "[t]hese physical and mental factors may affect plaintiff's ability to vigorously participate in the prosecution of a class action." *Id.*

Here, no medical reports were introduced indicating that McGinnis might not be able to vigorously participate in the prosecution of a class action. In fact, Advance America made no attempt to introduce McGinnis's medical records, nor did it call McGinnis to testify at the certification hearing. After reviewing McGinnis's deposition testimony, the circuit court found that there was "no evidence that Ms. McGinnis is not competent or is unable to fulfill the necessary duties as class representative." This finding is not clearly erroneous.

*Familiarity with Basic Facts of the Lawsuit*

Advance America next asserts that McGinnis is an inadequate representative because she is not familiar with the basic facts of the lawsuit. Advance America points to McGinnis's deposition testimony where she was unaware of what kind of damages she was seeking and, specifically, whether she was seeking punitive damages or damages for emotional distress. Advance America also points to McGinnis's deposition testimony where she could not remember when she first started doing business with Servicing or how many agreements she entered into with the company. In addition, Advance America states that McGinnis does not know that she sued two companies with which she never transacted business and that she believes that she sued individuals, despite the fact that she sued only companies. Advance America states that McGinnis does not know whether she seeks statewide or nationwide class certification or the time period at issue in the lawsuit. Further, Advance America states that McGinnis does not know whether Advance America's conduct violated a prior court-approved settlement or the DTPA, as alleged in the complaint. In sum, Advance America contends that McGinnis is detached from her role as class representative and this compels the reversal of the circuit court's order certifying the class.

McGinnis's deposition testimony demonstrates that she understood the basic process used in her transactions with Advance America and that she believed Advance America's practices were unlawful. For example, McGinnis testified regarding one of the transactions, in which she wrote a check to Advance America for $228.07 and was given cash in the amount of $200. She further testified that Advance America told her when the check would be presented for payment to her bank, and at that time, she could either repurchase the check for $228.07 or allow it to be presented to the bank. McGinnis testified that she believed $28.07 of the amount paid to Advance America was interest, and that the basis of the lawsuit was that Advance America had charged a usurious rate of interest in violation of the Arkansas Constitution.

In *F & G Financial Services, Inc. v. Barnes,* 349 Ark. 420, 82 S.W.3d 162 (2002), a payday lender challenged the adequacy of a plaintiff to represent the class, arguing that the plaintiff demonstrated a lack of knowledge about the terms of a settlement and was not aware of various facts about the case. We rejected this challenge, stating: "Despite Spencer's lack of understanding of some legal terms involved in the case, Spencer clearly showed a minimal level of interest in this action in that she contacted her attorneys concerning the action." *F & G,* 349 Ark. at 429, 82 S.W.3d at 167. We concluded that the representative satisfied "the minimal interest set by the third requirement derived from Rule 23(a)(4)." *Id.* at 429; 82 S.W.3d at 167.

The payday lender in *F & G* also objected to another representative, contending that she lacked the capacity to fairly and

adequately represent the proposed class because she did not know who the defendant was in her own case and because she did not know who she next intended to sue. *Id.* at 429; 82 S.W.3d at 167–68. We again rejected the payday lender's [13]challenge, and stated: "Barnes testified that she understands that she is suing appellants and that her goal is to represent all the people who have done business with appellants, and to stop the usury on these loans. Again, Barnes meets the minimal bar set by the third requirement of Rule 23(a)(4)." *Id.* at 429; 82 S.W.3d at 168.

Here, the circuit court found that McGinnis understood the basic process used in Advance America's transactions, understood the class's usury claim, and was generally familiar with Advance America's payday loan practices. These findings are not clearly erroneous. Despite her confusion over some of the facts of the case, McGinnis has demonstrated that she has shown a minimal level of interest in the litigation and a familiarity with the practices challenged.

*Comprehension of the Duties and Responsibilities of Class Representative*

 Advance America asserts that McGinnis is an inadequate representative because she does not comprehend the nature and extent of her responsibilities and duties as a class representative. Advance America states that McGinnis has shown little interest in the case, and that she has not discharged any duties as a class representative. Advance America also notes that, while McGinnis attended the class-certification hearing, she did not testify. Advance America also states that McGinnis lacks the finances to serve as class representative. Finally, Advance America states that McGinnis's failure to disclose information in a request for admission demonstrates that she is an inadequate representative.

McGinnis testified in her deposition that she felt qualified to be class representative. [14]She stated that she took care of her home, paid her bills, and took care of her grandchild, so she thought she could manage being class representative. She stated that she understood that, as class representative, it was her responsibility to make sure that all members of the class received notice of the suit. McGinnis testified that she was not aware of all of her duties and responsibilities as class representative, but that she intended to learn more about them from her attorneys. As for understanding her financial obligation, McGinnis testified in her deposition testimony that she was willing to spend money for litigation and would even mortgage her house to pursue the lawsuit, if necessary. As for her failure to disclose information, in Request for Admission No. 28, Advance America requested that McGinnis admit: "as a condition of entering into a Customer Agreement with Advance America/Servicing, on or about January 3, 2007, you wrote a check to Advance America Servicing on which payment was stopped." McGinnis denied this allegation, but she later admitted it in her deposition. McGinnis states that the basis of her denial in the request for admission was that the request was poorly worded. She explains that she did not stop payment on a check as a condition of entering into a customer agreement, but that she stopped payment later after she sought and received advice of counsel. Thus, she claims that her denial was appropriate and her subsequent testimony was truthful.

A review of McGinnis's deposition testimony reveals that she satisfactorily comprehends her duties and responsibilities as class representative. McGinnis admitted that she was not aware of all her duties and responsibilities, but she demonstrated a willingness [15]to consult with her attor-

neys and follow their instructions. She also testified that she was willing and able to finance the costs of litigation. As for her failure to disclose information in a request for admission, it appears that McGinnis may not have understood the question.

In sum, we conclude that Advance America has failed to demonstrate that McGinnis cannot adequately represent the class because (1) her untreated mental illness renders her incapable of making decisions in the best interests of the class, (2) McGinnis is not familiar with the basic facts of the lawsuit, and (3) McGinnis does not comprehend the nature and extent of her responsibilities and duties as a class representative. Therefore, we hold that the third element of the adequacy requirement has been satisfied.

*Conflict of Interest—Lack of Damages*

■ We now turn to McGinnis's remaining arguments concerning adequacy. These arguments concern the second element of the adequacy requirement—that there be no evidence of collusion or conflicting interest between the representative and the class. Advance America does not assert that there is evidence of collusion between McGinnis and the class. Rather, Advance America asserts that there is evidence of conflicting interest between McGinnis and the class. Advance America first asserts that McGinnis's lack of damages undermines her incentive to prosecute the case vigorously. McGinnis entered into six transactions with Servicing between September 1, 2006, and February 2, 2007. Each transaction was governed by a separate customer agreement, and McGinnis paid separate fees for all six transactions totaling $143.71. Pursuant to the last customer agreement, dated January 3, 2007, Servicing paid to McGinnis $250 in return for a personal check in the amount of $278.91, which was to be cashed on February 2, 2007. On the advice of counsel, McGinnis stopped payment on this check prior to February 2, 2007, and Servicing never received the total amount due of $278.91. Advance America contends that, although McGinnis paid a total of $143.71 in fees over the course of her business relationship with Servicing, she received and still owes to Servicing $250 for the January 3, 2007 advance. Advance America points out that McGinnis admitted that she had received more money from Servicing than she paid. Therefore, Advance America contends that McGinnis has suffered no monetary damages and has a conflict of interest with the class members who paid back the full amounts of their advances due to Servicing, in that she does not have the same incentive to prosecute the case as vigorously as class members who did not default on their customer agreements and who may have different claims for damages.

McGinnis contends that she has suffered the same types of damages as every class member and has demonstrated that she will vigorously prosecute this case. She states that the record contains undisputed evidence that Advance America exacted usurious interest from her on at least five separate instances, and that this proves that she and the class have usury claims and claims under the DTPA. Citing article 19, section 13 of the Arkansas Constitution, McGinnis states that she is entitled to double damages and a declaration that the loans are void. She states that the declaration is important to her and other class members, in light of Advance America's aggressive efforts to collect payment from those who stopped paying the usurious interest.

■ Advance America, by asserting that McGinnis has not suffered any monetary damages, has attempted to defeat

class certification by delving into the merits of the case. The circuit court's proper focus in deciding whether to certify a class is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. *See Direct Gen. Ins. Co. v. Lane,* 328 Ark. 476, 944 S.W.2d 528 (1997). It is totally immaterial whether the petition will succeed on the merits or even if it states a cause of action. *See id.*

At this point, we do not know if McGinnis will prevail on the merits of her case, but that is irrelevant at this stage of the proceeding. Even if McGinnis ultimately fails to make her case as to damages, the question before the circuit court was whether the claims of McGinnis and the class members arise from the same wrong allegedly committed by Advance America. Here, it is clear that the claims of McGinnis and the class members arise from the same wrong allegedly committed by Advance America—that Advance America charged a usurious rate of interest in violation of the Arkansas Constitution and engaged in deceptive trade practices in violation of the DTPA. McGinnis testified in her deposition that she wanted to pursue the lawsuit because she believed Advance America charged usurious interest rates in violation of the Arkansas Constitution and that she believed Advance America should be held accountable for its alleged wrongdoing. The alleged injury suffered—being charged interest at a usurious rate—is the same for McGinnis and all class members. Even assuming McGinnis suffered no monetary damages, she is not precluded from representing the class, as she allegedly suffered the same injury.

*Conflict of Interest*—Garrett *Litigation*

■ Advance America next asserts that McGinnis has a conflict of interest with the class because she was not a member of the *Garrett* settlement class and cannot enforce the *Garrett* settlement agreement. On October 12, 1999, Phyllis Garrett filed an action in the Clark County Circuit Court, alleging that the check-cashing transactions between Advance America and its customers were contracts that bore interest in excess of the maximum lawful rate set forth in article 19, section 13 of the Arkansas Constitution. As part of a settlement entered into with Garrett, Advance America agreed that, on or before May 15, 2001, Advance America would cease conducting check-cashing transactions in Arkansas. The complaint in the instant case requests "an Order for appropriate relief and to enforce the terms of the Settlement Agreement in [*Garrett v. Advance America*], Clark County Circuit Court Case No. CIV–99–152." Advance America states that McGinnis was neither a member of the *Garrett* class nor a party to the *Garrett* settlement and never received any notification about the *Garrett* litigation. Advance America also states that, prior to her November 6, 2007 deposition, McGinnis had no understanding of the *Garrett* settlement agreement and that she was not even aware of its existence. Accordingly, Advance America asserts that McGinnis's testimony demonstrates a conflict of interest with those members of the putative class who were members of the *Garrett* class and might otherwise arguably be able to enforce the settlement agreement in that case, if it has been violated.

McGinnis asserts that Advance America's arguments about the *Garrett* settlement have nothing to do with McGinnis's efforts to seek monetary relief for usury and DTPA violations in the present case. We agree. While the complaint requested an order enforcing the terms of the settlement agreement, the class definition in the instant case does not involve any monetary

damages resulting from a violation of the *Garrett* settlement. The class in this case is defined as follows:

All persons, other than the Defendants and their owners and agents, who have engaged in check cashing or deferred presentment transactions, pursuant to the Arkansas Check Cashers Act, with the Defendants in Arkansas since February 27, 2002, up through and including the date of the entry of judgment in this case.

Further, even assuming that the class members in this case might be able to enforce the *Garrett* settlement as a part of this case, McGinnis would not be precluded from representing the class, as the usury claims against the payday lender are the same in the *Garrett* litigation and in the instant case. Both suits involved allegations that the payday lender had charged a usurious rate of interest in violation of the Arkansas Constitution. In *FirstPlus Home Loan Owner 1997–1 v. Bryant*, 372 Ark. 466, 277 S.W.3d 576 (2008), we rejected an adequacy challenge based on the fact that some of the class representatives sought to raise claims against lenders who were strangers to the plaintiffs' individual transactions. We noted that the claims—usury and fraud—were the same for all members of the class. *Id.* Likewise, in the instant case, all of the members of the class have usury claims against Advance America. Even though McGinnis was not involved in the *Garrett* litigation, we cannot say that she is precluded from representing the *Garrett* claimants, should the terms of the *Garrett* litigation come into play in the instant case.

*Conflict of Interest—Claims Against Advance America/Arkansas and Centers*

Finally, Advance America asserts that McGinnis has a conflict of interest with the class, in that she has no basis to bring a claim against Advance America/Ar-

kansas and Centers. Advance America states that McGinnis never entered into customer agreements with either Advance America/Arkansas or Centers and that the customer agreements at issue in this case were between Servicing and the class members. Advance America states that McGinnis admits that she does not remember entering into any customer agreements with Advance America/Arkansas or Centers; according to Advance America, that is because Advance America/Arkansas stopped doing business in Arkansas in 2001, six years prior to the beginning of the class period, and Centers has never done business in Arkansas. In sum, Advance America contends that, because McGinnis has no claims against Advance America/Arkansas or Centers, she cannot serve as class representative.

McGinnis responds that the class contends that each of the entities has done business in the state and that the parent company is liable to the class for the damages of any of its subsidiaries pursuant to the DTPA. McGinnis contends that these issues are arguments about the merits of the case and have nothing to do with whether she is adequate to serve as class representative. We agree. Again, neither the circuit court nor this court shall delve into the merits of the underlying claims when deciding whether the Rule 23 requirements have been met. *See, e.g., Teris, LLC v. Chandler*, 375 Ark. 70, 289 S.W.3d 63 (2008). To resolve the issue regarding which entities are liable would force the circuit court and this court to delve into the merits of the underlying claims. That is not appropriate at this stage of the proceeding. Thus, we find no merit in Advance America's claim that McGinnis has no basis to bring a claim against Advance America/Arkansas and Centers. We hold that the second element of the adequacy requirement has been sat-

isfied. Further, based on the foregoing, we hold that the circuit court did not abuse its discretion in finding that McGinnis is an adequate representative for the class.

Affirmed.