Cite as 2024 Ark. App. 228

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-22-808

| | |
|---|---|
| ALTICE USA, INC., D/B/A SUDDENLINK COMMUNICATIONS<br><br>APPELLANT<br><br>V.<br><br>CITY OF GURDON, ARKANSAS<br><br>APPELLEE | Opinion Delivered April 3, 2024<br><br>APPEAL FROM THE CLARK COUNTY CIRCUIT COURT<br>[NO. 10CV-21-19]<br><br>HONORABLE BLAKE BATSON, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Altice USA, Inc., d/b/a Suddenlink Communications ("Suddenlink") appeals the orders of the Clark County Circuit Court denying its motion to compel individual arbitration and granting the motion of appellee, City of Gurdon, Arkansas ("Gurdon"), for certification of its complaint as a class action. We affirm.

I. *Factual and Procedural Background*

Suddenlink provides cable television, internet, and telephone services to customers throughout Arkansas. In 1977, Gurdon promulgated Ordinance No. 273, which granted Suddenlink's predecessor, Gurdon Cable TV, Inc., the right to establish a distribution system, including the right to erect and use equipment in Gurdon's public rights-of-way, for the purpose of providing cable television to the citizens of Gurdon. To compensate Gurdon for the operation of the distribution system and in lieu of other taxes and fees, Gurdon Cable

TV, Inc., agreed to pay Gurdon an annual franchise fee equal to 2 percent of gross annual service revenue received by the company.   In 2004, through Ordinance No. 04-007, Ordinance No. 273 was extended for an additional twenty-five years, the franchise was assigned to TCA Cable Partners d/b/a Cox Communications, and Gurdon was given the right to increase the franchise fee on gross subscription receipts up to the maximum permitted by law at any time during the term of the agreement. At that time, the franchise fee was set at 4.25 percent. In 2006, those franchise rights were assigned via Resolution No. 06-001 to Cebridge Acquisition, L.P., which is now an affiliate of Suddenlink. Additionally, Gurdon is a customer of Suddenlink, using the provider for its television, internet, and phone services.

On February 21, 2021, Gurdon filed a class-action complaint against Suddenlink alleging that Suddenlink had failed to properly pay franchise fees to Gurdon and to other cities similarly situated. In addition, Gurdon claimed that Suddenlink had failed to maintain minimum standards of conduct for the benefit of its customers in Gurdon and customers in other cities. Specifically, the complaint noted that Suddenlink's customers had been experiencing problems with Suddenlink's services, such as excessive pricing, poor communication, poor customer service, excessive wait times for customers who attempt to contact the company, a lack of local offices, and other customer-relations issues.  Gurdon thus sought judgment for itself and the other putative class members for all unpaid amounts for the use of public rights-of-way for the past five years; in addition, Gurdon sought an order

requiring Suddenlink to maintain the minimum customer-service standards "required by law." Gurdon formally moved for class certification on April 19, 2022.

In May 2022, Suddenlink moved to compel individual non-class arbitration.[1] In a supporting brief, Suddenlink argued that Gurdon itself had phone, internet, and television services with Suddenlink and that by paying its monthly service bills, Gurdon had repeatedly agreed to Suddenlink's commercial services agreement. Each of Suddenlink's billing statements contains a provision noting, "Bill payment confirms your acceptance of the Business Services Agreement." That service agreement, in turn, contained a notice that provides as follows:

> **THIS AGREEMENT CONTAINS A BINDING ARBITRATION AGREEMENT THAT AFFECTS CUSTOMER'S RIGHTS, INCLUDING THE WAIVER OF CLASS ACTIONS AND JURY TRIALS. THE AGREEMENT ALSO CONTAINS PROVISIONS FOR OPTING OUT OF ARBITRATION. PLEASE READ IT CAREFULLY.**

The arbitration agreement itself provides that

> [a]ny and all disputes arising between You and Suddenlink, including its respective parents, subsidiaries, affiliates, officers, directors, employees, agents, predecessors, and successors, shall be resolved by binding arbitration on an individual basis in accordance with this arbitration provision. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:
>
> > Claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory;

---

[1]Before filing its motion to compel arbitration, Suddenlink sought to remove the case to federal court. The federal court remanded the matter to the circuit court because the amount in controversy did not meet the jurisdictional minimum required for diversity jurisdiction.

Claims that arose before this or any prior Agreement;

Claims that may arise after the termination of this Agreement.

The arbitration agreement further stated, "You agree to arbitrate your dispute and to do so on an individual basis; class, representative, and private attorney general arbitrations are not permitted." Because of the broad nature of the arbitration agreement contained in the commercial services agreement, Suddenlink argued that Gurdon was bound to arbitration.[2]

Suddenlink also filed a memorandum in opposition to Gurdon's motion for class certification, arguing that Gurdon had not met the requirements of Arkansas Rule of Civil Procedure 23. Specifically, Suddenlink challenged Gurdon's satisfaction of the requirements of commonality, predominance, typicality, adequacy, or superiority. Gurdon responded to Suddenlink's motion, denying its allegations and requesting a hearing.

The circuit court held a hearing on the arbitration and class-certification motions on August 29, 2022. Following the hearing, the court entered separate orders on September 21 denying Suddenlink's motion to compel individual non-class arbitration and granting Gurdon's motion for class certification. Regarding Suddenlink's motion to compel arbitration, the court found that Gurdon's franchise-fee claims did not involve the customer-service agreement by which Suddenlink provided services to the city; rather, the claims involved Suddenlink's obligations under the franchise agreement and under the Arkansas

---

[2]In the alternative, Suddenlink filed a motion to dismiss Gurdon's complaint pursuant to Arkansas Rule of Civil Procedure 12(b)(6) and (b)(1).

Video Service Act. The court further found that Suddenlink had not satisfied its burden of showing that the parties formed a valid agreement to arbitrate.[3] As to Gurdon's motion for class certification, the court found that Gurdon had satisfied the requirements of Rule 23. It therefore certified a class of "all Arkansas cities which are entitled to receive franchise payments from Suddenlink and which are entitled to enforce basic customer protections [for] their citizens." Suddenlink filed a timely notice of appeal.

## II. *Arbitration*

In its first argument on appeal, Suddenlink asserts that the circuit court erred in denying its motion to compel arbitration "because Gurdon and Suddenlink agreed to arbitrate all disputes arising from their relationship." An order denying a motion to compel arbitration is immediately appealable pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12) (2018). We review a circuit court's denial of a motion to compel arbitration de novo on the record. *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2019 Ark. 305, at 4, 586 S.W.3d 624, 628–29.

When a court is asked to compel arbitration, it is limited to deciding two threshold questions: (1) whether there is a valid agreement to arbitrate between the parties, and (2) if such an agreement exists, whether the dispute falls within its scope. *Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, 437 S.W.3d 119. The threshold issue is whether there was a valid

---

[3]The court also denied Suddenlink's Rule 12(b)(6) motion to dismiss; however, Suddenlink does not challenge this aspect of the court's ruling on appeal.

5

arbitration agreement. *Hot Springs Nursing & Rehab. - A Waters Cmty., LLC v. Hooker*, 2024 Ark. App. 80, ___ S.W.3d ___.

Even though an arbitration agreement may be subject to the Federal Arbitration Act ("FAA"), this court looks to state contract law to determine if the parties' agreement is valid. *GGNSC Holdings, LLC v. Chappel*, 2014 Ark. 545, 453 S.W.3d 645. In determining the threshold inquiry of whether a valid agreement to arbitrate exists, we have held that, as with other types of contracts, the essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation. *Crawford Operations, LLC v. Davis*, 2023 Ark. App. 277, 668 S.W.3d 527. Suddenlink, as the proponent of the arbitration agreement, has the burden of proving these essential elements. *See LNH One, LLC v. Gaspar*, 2024 Ark. App. 93, ___ S.W.3d ___. Because arbitration is a matter of contract between the parties, it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration. *Erwin-Keith, Inc. v. Stewart*, 2018 Ark. App. 147, 546 S.W.3d 508.

Suddenlink argues that the circuit court erred in finding that it failed to satisfy its burden of showing the parties formed a valid agreement to arbitrate and in finding that the contract lacked mutuality of agreement. In order to have a valid agreement to arbitrate, there must be mutual agreement with notice as to the terms and subsequent assent. *Crawford Operations, supra*. In support of its argument, Suddenlink points to the commercial services agreement, which contained the arbitration agreement. Suddenlink contends that Gurdon

was on notice of the terms of the arbitration agreement because, by paying its bills, Gurdon accepted the terms of service.

In a series of recent cases involving Suddenlink, this court held that individual customers had entered into a valid agreement to arbitrate because the customers' payment of their monthly invoices and acceptance of Suddenlink's services manifested their agreement to the arbitration provision contained in their respective residential services agreements. *See Altice USA, Inc. v. Peterson*, 2023 Ark. App. 116, 661 S.W.3d 699; *Altice USA, Inc. v. Francis*, 2023 Ark. App. 117; *Altice USA, Inc. v. Johnson*, 2023 Ark. App. 120, 661 S.W.3d 707; *Altice USA, Inc. v. Campbell*, 2023 Ark. App. 123, 661 S.W.3d 720; *Altice USA, Inc. v. Runyan*, 2023 Ark. App. 124, 662 S.W.3d 247.

Although similar, we find those cases to be distinguishable. In each of those cases, the individual customers brought complaints about aspects of their residential cable, internet, or telephone service. For example, in *Peterson*, the plaintiff alleged that she was overbilled and that her bills contained multiple unexplained charges; in *Johnson*, the plaintiff complained of service interruptions and unexplained charges. The other three cases involved similar claims arising from Suddenlink's provision of services. As noted above, we found those claims to be governed by the arbitration clause in the residential services agreements.

While it is true that there is similarity between the agreements in the cases above and the agreement to arbitrate contained within the commercial services agreement between Gurdon and Suddenlink for the services Suddenlink provides to Gurdon as a customer, the similarity ends there. Gurdon's claims in this case do not arise from the commercial services

7

agreement but rather, as the circuit court found, Gurdon's entitlement "to receive franchise payments from Suddenlink." In other words, the relationship between these parties is not as customer and provider but rather as franchising authority and franchisee. Any disputes regarding the franchise fee would thus be governed by the ordinances and resolutions establishing and continuing the franchise, which make no mention of an intention or agreement to arbitrate. *See Asbury Auto. Grp., Inc. v. McCain*, 2013 Ark. App. 338, at 5 (noting that the FAA requires an arbitration agreement to be written).

We find this case to be analogous to *Crain v. Byrd*, 2019 Ark. App. 316, 577 S.W.3d 765. In *Crain*, Christopher Byrd was employed by Crain Automotive until October 26, 2017. Shortly thereafter, Byrd and Crain entered into an "Employee/Employer Mutual Release Agreement" (MRA) that contained certain terms associated with the cessation of Byrd's employment. In February 2018, Byrd sued Crain for fraud and breach of contract based on the MRA. Crain subsequently moved to compel arbitration, asserting that Byrd's claims arose from Crain's operating agreements, which contained arbitration clauses. The circuit court denied Crain's request for arbitration, finding that the MRA did not reference or incorporate the operating agreements nor did the MRA itself contain an arbitration provision. *Crain*, 2019 Ark. App. 316, at 2–3, 577 S.W.3d at 766–67. On appeal, this court affirmed:

> Whether a dispute should be submitted to arbitration is a matter of contract construction, and we look to the language of the contract that contains the agreement to arbitrate and apply state-law principles. We have further held that the same rules of construction and interpretation apply to arbitration agreements as apply to

> agreements generally; thus, we will seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself.
>
> Here, there is an arbitration provision, but it is in the operating agreements, which are *earlier, separate documents* from the Mutual Release Agreement. There is *no arbitration provision in the actual contract that appellee is suing on* nor is there a reference to the operating agreements in the Mutual Release Agreement.

*Id.* at 4, 577 S.W.3d at 767–78 (emphasis added) (internal citations omitted).

Similarly, here, there is an arbitration provision, but it is in the commercial services agreement, which is a separate document from the franchise agreement. The franchise agreement, which forms the basis for Gurdon's suit against Suddenlink, contains no arbitration provision nor does it reference, incorporate, or merge into the commercial services agreement (and concomitantly, the commercial services agreement does not reference, incorporate, or merge into the franchise agreement). The two agreements are separate contracts between Gurdon and Suddenlink, entered into decades apart. Gurdon sued Suddenlink over its alleged breach of the terms of the older agreement––which contains no arbitration provision.

Suddenlink nonetheless argues that the language in the arbitration agreement is exceptionally broad––it purports to apply to "*any and all disputes* arising between [Gurdon] and Suddenlink," including "claims a*rising out of or relating to any aspect of the relationship between us*, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory." (Emphasis added.) In support of its argument, Suddenlink cites *Unison Co., Ltd. v. Juhl Energy Development, Inc.*, 789 F.3d 816, 818 (8th Cir. 2015), for its statement that when an arbitration provision is broadly written, arbitration should be enforced "as long as

9

the underlying factual allegations simply touch matters covered by the arbitration provision."[4]

We disagree, however, that the franchise-fee allegations of Gurdon's complaint "touch matters covered by the arbitration provision." Indeed, the plain language of the commercial services agreement makes it clear that the "binding arbitration agreement" "**AFFECTS *CUSTOMER'S* RIGHTS.**" (Emphasis added.) Simply stated, Gurdon is not suing as a "customer" in this case. It is suing as the grantor of Suddenlink's franchise. The purportedly broad language of the commercial services agreement does not sweep so widely as to encompass the nature of Gurdon's claim. As noted above, arbitration is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration. *Erwin-Keith, Inc., supra.*

Additionally, we find our conclusion bolstered by language from one of our previously cited *Suddenlink* cases. In *Altice USA, Inc. v. Johnson*, one of Johnson's arguments in opposition to arbitration was that we should affirm "because Suddenlink has failed to establish that its franchise agreement with the city of Arkadelphia would allow it to force Arkadelphia citizens into arbitration." 2023 Ark. App. 120, at 16, 661 S.W.3d at 719. We rejected Johnson's argument, explaining that

---

[4]The other cases on which Suddenlink relies in support of its "broad arbitration language" argument are a case from the Fourth Circuit (*Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566 (4th Cir. 1998)), and an unpublished federal district court opinion (*Cash Converters USA, Inc. v. Burns*, No. 99 C 146, 1999 WL 98345 (N.D. Ill. Feb. 19, 1999)), neither of which is binding on this court.

[t]he relevance of the franchise agreement is not readily apparent because Suddenlink sought arbitration *pursuant to its* [*residential services agreement*] *with Johnson rather than the franchise agreement that it had with the city.* Johnson does little to explain how the franchise agreement applies here or how . . . [it] is relevant to Suddenlink's ability to enforce the arbitration provision in the RSA. Consequently, we cannot agree that the franchise agreement provides a basis to affirm the order denying Suddenlink's motion to compel arbitration.

*Id.* at 17, 661 S.W.3d at 720 (emphasis added). Clearly, in *Johnson*, we considered the franchise agreement with the city and the residential services agreement with Suddenlink's customers to be entirely separate agreements. We see no reason to reach a different conclusion in the instant appeal.

In short, there is no valid agreement to arbitrate, which is the first threshold question to be answered when a court is asked to compel arbitration. *See Asset Acceptance*, *supra*. Because there is no valid agreement to arbitrate in the franchise agreement, we therefore affirm the circuit court's denial of Suddenlink's motion to compel arbitration.

### III. *Class Certification*

Suddenlink next argues that the circuit court erred in certifying a class action for Gurdon's claims. An interlocutory appeal may be taken from an order certifying a case as a class action in accordance with Arkansas Rule of Civil Procedure 23. Ark. R. Civ. P. 23. Circuit courts are given broad discretion in matters regarding class certification; we will not reverse a circuit court's decision to grant or deny class certification absent an abuse of discretion. *Funding Metrics, LLC v. Letha's Pies, LLC*, 2022 Ark. 73, at 4; *ChartOne, Inc. v. Raglon*, 373 Ark. 275, 283 S.W.3d 576 (2008).

When reviewing a circuit court's class-certification order, this court reviews the evidence in the record to determine whether it supports the circuit court's decision. *Advance Am. Servicing of Ark., Inc. v. McGinnis*, 2009 Ark. 151, at 4–5, 300 S.W.3d 487, 491. This court does not delve into the merits of the underlying claims at this stage because the issue of whether to certify a class is not determined by whether the plaintiff has stated a cause of action for the proposed class that will prevail. *See Am. Abstract & Title Co. v. Rice*, 358 Ark. 1, 186 S.W.3d 705 (2004). When reviewing findings of fact by a circuit court, this court uses a clearly erroneous standard. *See* Ark. R. Civ. P. 52(a) (2008). Thus, findings by the circuit court will not be set aside unless they are clearly against the preponderance of the evidence. *See McGinnis, supra.*

Rule 23 of the Arkansas Rules of Civil Procedure provides in relevant part:

(a) *Prerequisites to Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties and their counsel will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. At an early practicable time after the commencement of an action brought as a class action, the court shall determine by order whether it is to be maintained. For purposes of this subdivision, "practicable" means reasonably capable of being accomplished. An order under this section may be altered or amended at any time before the court enters final judgment. An order certifying a class action must define the class and the class claims, issues, or defenses.

Rule 23 thus provides six requirements for class certification: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) predominance; and (6) superiority. In this appeal, Suddenlink challenges only four of the six requirements: commonality, predominance, typicality, and superiority. It also breaks its arguments down into the two separate causes of action the circuit court identified: (1) its failure to pay franchise fees, and (2) its failure to meet certain customer-service standards.

A. Franchise Fees

1. *Commonality*

Under Rule 23(a)(2), the circuit court must determine whether there are "questions of law or fact common to the class." The supreme court has held that this requirement is case specific. *See Johnson's Sales Co., Inc. v. Harris*, 370 Ark. 387, 260 S.W.3d 273 (2007). Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. The test or standard for meeting the commonality requirement is that there need only be a single issue common to all members of the class. *Simpson Housing Sols., LLC v. Hernandez*, 2009 Ark. 480, 347 S.W.3d 1. When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected. *Id.* The circuit court must determine which elements in a cause of action are common questions for the purpose of certifying a class. *Id.* Commonality is satisfied when the defendant's acts, independent of any action by the class members, establishes a common question relating to the entire class. *Rosenow v. Alltel Corp.*, 2010 Ark. 26, 358 S.W.3d 879.

13

The proper starting point in analyzing commonality is whether there is at least one single issue common to all members of the class. *Id.* The mere fact that individual issues and defenses may be raised regarding the recovery of individual members cannot defeat class certification if there are common questions concerning the defendant's alleged wrongdoing that must be resolved for all class members. *Nat'l Cash, Inc. v. Loveless*, 361 Ark. 112, 205 S.W.3d 127 (2005). Moreover, an attempt to raise defenses at this stage is an attempt to delve into the merits of the case. *Id.*

Here, the circuit court found that there was an issue common to all members of the class: whether Suddenlink made the required franchise-fee payments to the class members. On appeal, Suddenlink argues that Gurdon did not identify a cause of action in its complaint but instead only vaguely contended that Suddenlink failed to pay it and the other class members a quarterly franchise fee, without identifying the contract under which fees were owed. Suddenlink further complains that resolving whether it paid "each city" an "appropriate" amount of franchise fees necessarily requires answering questions concerning its liability to each city. It contends that the court cannot resolve whether it made proper payments with "one set of operative facts that establishes liability."

Suddenlink's arguments, however, appear to go to the merits of the underlying claims, which is inappropriate at this juncture in a class action. *See Baptist Health v. Hutson*, 2011 Ark. 210, at 4, 382 S.W.3d 662, 666 ("Neither the trial court nor this court shall delve into the merits of the underlying claims when deciding whether the Rule 23 requirements have been met."). The common question is simply whether Suddenlink paid the franchise fee or

whether it did not. This is an "issue common to all members of the class." *Rosenow*, 2010 Ark. 26, at 6, 358 S.W.3d at 885. The question of what percentage Suddenlink owed to any given city or what the ultimate damages might be is a question on the merits of the underlying claim. We therefore cannot say that the circuit court erred in finding that the commonality requirement of Rule 23 was satisfied.

## 2. *Predominance*

Rule 23(b) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members[.]" In *Georgia-Pacific Corp. v. Carter*, 371 Ark. 295, 265 S.W.3d 107 (2007), the supreme court noted that the starting point in examining the predominance issue is whether a common wrong has been alleged against the defendant. If a case involves preliminary, common issues of liability and wrongdoing that affect all class members, the predominance requirement of Rule 23 is satisfied even if the circuit court must subsequently determine individual damages issues in bifurcated proceedings. *See Johnson's Sales Co., Inc.*, *supra*. In addition, the supreme court has said that

> [t]he predominance element can be satisfied if the preliminary, common issues may be resolved before any individual issues. In making this determination, we do not merely compare the number of individual versus common claims. Instead, we must decide if the issues common to all plaintiffs "predominate over" the individual issues, which can be resolved during the decertified stage of bifurcated proceedings.

*Carter*, 371 Ark. at 301, 265 S.W.3d at 107. If, however, the preliminary issues are individualized, then the predominance requirement is not satisfied. *ChartOne, Inc.*, 373 Ark. 275, 283 S.W.3d 576.

As with the commonality requirement, the alleged wrongdoing is common to each of the class members. Even though the dollar figure or the percentage of the franchise fee may be unique to each city in the class, Suddenlink either did or did not pay the franchise fee. Thus, the existence of one common claim among the class clearly predominates, and the circuit court did not abuse its discretion in so finding.

### 3. *Typicality*

The typicality requirement of Rule 23 is satisfied when the event or practice or course of conduct that gives rise to the claim of other class members is the same event or practice or course of conduct that gives rise to the plaintiff's injury and where the claim is based on the same legal theory. *Van Buren Sch. Dist. v. Jones*, 365 Ark. 610, 619, 232 S.W.3d 444, 451 (2006). The class representative's claim must only be typical, not identical. *Asbury Auto. Grp., Inc. v. Palasack*, 366 Ark. 601, 609, 237 S.W.3d 462, 468 (2006). When the complaint alleges that the defendant's unlawful conduct affected both the plaintiff and the putative class, the typicality requirement is usually met irrespective of varying fact patterns that may underlie individual claims. *Ark. Media, LLC v. Bobbitt*, 2010 Ark. 76, at 8, 360 S.W.3d 129, 135. The essence of the typicality requirement is the conduct of the defendant and not the varying fact patterns and degree of injury or damages to individual class members. *Teris, LLC v. Chandler*, 375 Ark. 70, 80, 289 S.W.3d 63, 70 (2008).

Here, the claims of the class representative and the claims of the class allege the same unlawful conduct on the part of the defendant: that Suddenlink failed to pay to the putative class members the franchise fees it was obligated to pay. Because the claims arise from the

same general course of conduct on Suddenlink's part, we cannot conclude that the circuit court abused its discretion in finding that Gurdon satisfied the typicality requirement.

4. *Superiority*

The superiority requirement is satisfied if class certification is the more efficient way to handle the case, and it is fair to both sides. *See Indus. Welding Supplies of Hattiesburg, LLC v. Pinson*, 2019 Ark. 325, at 12, 587 S.W.3d 540, 549. Real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. *Id.* In determining whether class-action status is the superior method for adjudication of a matter, it may be necessary for the circuit court to evaluate the manageability of the class. *Id.* Whether common questions predominate and whether a class action is a superior method of deciding the case are, to a degree, necessarily subjective questions and very much related to the broad discretion conferred on a circuit court faced with them. *See Summons v. Mo. Pac. R.R.*, 306 Ark. 116, 122, 813 S.W.2d 240, 243 (1991).

Here, the circuit court found that it would not be cost effective for each putative class member to file a separate lawsuit. In addition, the court found that class certification would benefit Suddenlink because it would only have to pay to litigate the issues presented by this matter one time, as opposed to potentially being required to appear and defend in dozens of courtrooms across Arkansas. The supreme court found that the superiority element was satisfied in light of on similar reasoning in *Altice USA, Inc. v. City of Gurdon*, 2022 Ark. 199,

17

at 8–9, 654 S.W.3d 641, 647–48. We can find no abuse of discretion in the circuit court's finding that Rule 23's superiority requirement was satisfied.

## B. Customer-Service Standards

The circuit court also certified a class of "[a]ll Arkansas cities . . . which are entitled to enforce basic customer protections from [sic] their citizens" over violations of the Arkansas Video Service Act, Ark. Code Ann. § 23-19-206 (Repl. 2015). Suddenlink argues that Gurdon's allegation that it failed to meet specific customer-service standards cannot support class certification.

The crux of Suddenlink's argument[5] is that Gurdon failed to offer any admissible evidence to support the court's commonality finding on this issue. In other words, it complains that Gurdon offered "no admissible evidence showing that the court can resolve Suddenlink's alleged failure to meet customer service standards in each municipality with classwide proof." In making this argument, Suddenlink concedes that "the parties conducted no discovery before Gurdon moved for class certification."

In support of its argument, Suddenlink cites *Convent Corporation v. City of North Little Rock*, 2016 Ark. 212, 492 S.W.3d 498, as holding that admissible evidence is required to support or oppose class certification. In that case, the supreme court reversed the circuit

---

[5]Suddenlink also argues that the circuit court's class definition is too indefinite. It cites the above language in the class definition that says "cities . . . which are entitled to enforce basic customer protections *from* their citizens." It contends that using the word "from" means that the class "consists of Arkansas cities whose *citizens* owe the *cities* basic customer protections." The use of the word "from" instead of "for" is clearly a scrivener's error, and the meaning and intent of the class definition is readily apparent from the context.

18

court's denial of class certification where the court found that the party seeking class certification did not present any evidence *at the hearing* on the motion to certify. The supreme court held that the circuit court "should have considered the evidence *in the record*, which would have included any admissible evidence submitted as exhibits by the parties in support of their contentions that the motion for class certification should have been granted or denied." *Convent Corp.*, 2016 Ark. 212, at 8, 492 S.W.3d at 503 (emphasis added).

Suddenlink's argument on appeal seems to suggest that the circuit court was required to have considered a specific quantum of evidence demonstrating Suddenlink's failures regarding its customer-service obligations before it could certify a class. That, however, would have put the circuit court in the position of considering the merits of Gurdon's claims, which is inappropriate at the class-certification stage of the proceedings.

In any event, however, Gurdon presented proof supporting its motion for class certification in the form of an affidavit from the mayor of Gurdon; an affidavit from the city clerk of Pocahontas (noting that "many residents of Pocahontas have complained about Suddenlink services); a copy of a complaint filed by the City of Pocahontas outlining customer-service problems that city had had with Suddenlink; a letter from the mayor of Jonesboro to the Arkansas Attorney General's office detailing multiple problems that Jonesboro had experienced with Suddenlink's customer service; and a newspaper article

19

describing connectivity and customer-relations problems experienced by customers in Batesville.[6]

Suddenlink does not argue that these exhibits were per se "inadmissible." Nor does it argue that Gurdon should have presented affidavits or other evidence from every proposed class member. Rather, its argument is the affidavits "left unspecified which services [residents] complained about," suggesting that the affidavits were too generic to support the circuit court's commonality decision. Such an argument, however, is directed at the underlying merits of the lawsuit, not the court's procedural class-certification decision. We therefore find no merit to Suddenlink's argument on this point.

Affirmed.

HARRISON, C.J., and GLADWIN, J., agree.

*Husch Blackwell, LLP*, by: *Laura C. Robinson*; and *McMillan, McCorkle & Curry, LLP*, by: *F. Thomas Curry*, for appellant.

*Thrash Law Firm, P.A.*, by: *Thomas P. Thrash* and *Will T. Crowder*; and *Turner & Turner, P.A.*, by: *Todd Turner*, for appellee.

---

[6]Gurdon attached numerous other articles to its motion for class certification, but they pertained to cities, states, and entities outside Arkansas.